UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23150-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

JOSHUA HAMILTON,                    :

    Petitioner,                 :

v.                                  :        REPORT OF
                                             MAGISTRATE JUDGE
WALTER A. McNEIL,                   :

    Respondent.                 :
_____

## I. Introduction

Joshua Hamilton, a state prisoner confined at Hamilton Correctional Institution at Jasper, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking his convictions entered in Case No. 00-40145 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's response to an order regarding the limitations period, the respondent's responses to an order to show cause and supplemental order to show cause with multiple exhibits, and the petitioner's replies.

## II. Claims

Hamilton raises the following grounds for relief:

1.    He received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the trial court's instruction to the jury on excusable homicide was "fundamentally flawed" and "misleading" in that it negated his theory of self-defense.

2.    His convictions are unlawful, because they are based upon improper comments made by the prosecutor during rebuttal closing argument.

3.    The trial court erred by instructing the jury that he had to prove his claim of self-defense beyond a reasonable doubt.

III. <u>Procedural History</u>

Hamilton was charged by Amended Information with the offenses of second degree murder (Count 1), possession of a firearm by a convicted felon (Count 2), and resisting arrest without violence (Count 3). (DE# 9; Ex. A). He proceeded to trial before a jury as to Counts 1 and 3, after which he was found guilty of manslaughter with a firearm, a lesser included offense of the crime charged in Count 1, and guilty of the offense charged in Count 3. (DE# 9; Ex. B). Hamilton was adjudicated guilty of the offenses and he was sentenced as a prison releasee reoffender and violent career criminal to a life term of imprisonment as to Count 1 with a mandatory minimum term of thirty years. (DE# 9; Ex. D). Sentence was suspended as to Count 3. <u>Id</u>. As to the offense charged in Count 2, Hamilton was convicted upon a plea of guilty and he was sentenced as a prison releasee reoffender to a term of imprisonment of forty years with a fifteen-year mandatory minimum term. (DE# 9; Ex. C, D). The sentence as to Count 2 was imposed to run concurrent to the sentence entered as to Count 1. <u>Id</u>

Hamilton prosecuted a direct appeal from his convictions, raising the claim presented in this federal petition as ground two and a second unrelated claim. (DE# 9; Ex. E). The Florida Third District Court of Appeal by written opinion issued on July 13,

2

2005, affirmed the convictions. See Hamilton v. State, 907 So. 2d 1228 (Fla. 3 DCA 2005). While the direct appeal was pending, Hamilton also challenged the lawfulness of his sentences, filing in the trial court a pro se motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800(a). (DE# 9; Ex. H). The motion was summarily denied by the trial court. (DE# 9; Ex. I). The trial court's ruling was *per curiam* affirmed without written opinion, see Hamilton v. State, 924 So. 2d 821 (Fla. 3 DCA 2006)(table), after a response from the state, and the mandate issued on April 7, 2006. (DE# 9; Ex. J).

During the pendency of the Rule 3.800 proceedings, Hamilton also sought pro se postconviction relief pursuant to Fla.R.Crim.P. 3.850 in which he alleged that he had received ineffective assistance of trial counsel for four reasons not relevant to this federal proceeding. (DE# 9; Ex. K). After the state had filed its response, the trial court summarily denied the motion. (DE# 9; Ex. L, M). The Florida appellate court affirmed the denial of postconviction relief in a *per curiam* decision, see Hamilton v. State, 935 So. 2d 46 (Fla. 3 DCA 2006), *citing* Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and the mandate issued on August 18, 2006. (DE# 9; Ex. N).

After waiting for approximately eight months with no state court proceedings pending, Hamilton filed in the Florida Third District Court of Appeal on April 20, 2007, a pro se petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel for the same reason claimed in this federal proceeding as well as additional unrelated reasons. (DE# 9; Ex. O). The state filed a response to the petition, after which the appellate court denied the petition without explanation. (DE# 9; Ex. P, Q). Hamilton's subsequent motion for rehearing and rehearing en banc

were denied, see Hamilton v. State, 975 So.2d 1148 (Fla. 3 DCA 2008), and the case was disposed of without mandate on March 4, 2008. (DE# 9; Ex. Q). Days after the state habeas corpus proceeding had concluded, on March 18, 2008, Hamilton again unsuccessfully challenged the lawfulness of his enhanced sentence before the trial court in a second pro se Rule 3.800. (DE# 9; Ex. R, S). The summary denial was affirmed by the Third District Court of Appeal, see Hamilton v. State, 986 So. 2d 613 (Fla. 3 DCA 2008)(table), and the mandate issued on August 4, 2008. (DE# 9; Ex. S). The Florida Supreme Court dismissed Hamilton's petition for review for lack of jurisdiction one day later on August 5, 2008. See Hamilton v. State, 989 So.2d 1184 (Fla. 2008)(table).

While proceedings remained pending in the state appellate court, Hamilton also challenged his convictions and sentences in a pro se petition to invoke "all writs" jurisdiction, challenging the lawfulness of his convictions and sentences on various grounds, including the claim presented here as ground three. (DE# 9; Ex. U). The Florida Third District Court of Appeal denied the petition without explanation and denied Hamilton's motion for rehearing. (DE# 9; Ex. V). See also Hamilton v. State, 990 So. 2d 1074 (Fla. 3 DCA 2008). The case was disposed of without mandate on September 3, 2008. (DE# 9; Ex. V). On October 1, 2008, Hamilton was denied review by the Florida Supreme Court when the court determined that it lacked jurisdiction. See Hamilton v. State, 994 So.2d 305 (Fla. 2008).

Soon after all state court proceedings had concluded, Hamilton came to this Court filing on October 28, 2008,[1] the instant federal

---

[1]This Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n. 4 (11 Cir. 2008). See also Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed

habeas corpus petition pursuant to 28 U.S.C. §2254. The respondent first asserted in his initial response to the order to show cause that this petition should be dismissed as untimely filed pursuant to 28 U.S.C. §2244(d). See Response to Order to Show Cause at 6-9. (DE# 8). The respondent argued in the alternative that the petition should be denied in that claim three is unexhausted and/or procedurally barred from federal habeas corpus review and claims one and two are meritless. Id. at 10-7. From preliminary review of the record, it appeared that the time-bar argument was incorrect and that dismissal of the petition on that basis was not warranted. See DE# 13. Also, earlier review of the file revealed that the Respondent's supporting Appendix was not complete and further briefing was needed. Accordingly, a supplemental order to show cause was entered. Id. The Respondent has now filed a supplemental response and supplemental Appendix. (DE# 17, 18).

## IV. Threshold Issues

### A. Timeliness

The respondent initially asserts that this petition is time-barred. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must generally file his §2254 petition within one year from the date that his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review. See 28 U.S.C. §2244(d)(1)(A);[2]

---

and delivered to prison authorities for mailing). See Petition at 15. (DE# 1).

[2]The statute provides that the limitations period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;

<u>Jimenez v. Quarterman</u>, 555 U.S. ___, ___, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending.[3] 28 U.S.C. §2244(d)(2).

The judgment of conviction and sentence in the subject criminal case became final at the latest on October 11, 2005, ninety days after the conviction and sentence were affirmed on direct appeal. <u>See</u> <u>Jimenez v. Quarterman</u>, 129 S.Ct. at 685; SUP.CT.R. 13(1). Since this federal petition for writ of habeas corpus challenging the subject convictions was not filed until October 28, 2008, well-beyond one year after the date on which the conviction became final, the petition is time-barred pursuant to 28 U.S.C. §2244(d)(1)(A) unless the limitations period was extended by properly filed applications for state post-conviction or other collateral review proceedings. 28 U.S.C. §2244(d)(2). As indicated above, Hamilton actively pursued various postconviction proceedings in both the state trial and appellate courts.

Full and careful review of the record shows that there is not

---

        (C) the date on which the constitutional right asserted was
initially recognized by the Supreme Court, if that right has been
newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
        (D) the date on which the factual predicate of the claim or
claims presented could have been discovered through the exercise of
due diligence.

28 U.S.C. §2244(d)(1).

        [3]A properly-filed application is defined as one whose "delivery and
acceptance are in compliance with the applicable laws and rules governing
filings," which generally govern such matters as the form of the document, the
time limits upon its delivery, the court and office in which it must be lodged,
and the requisite filing fee. <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000)(<u>overruling</u>
<u>Weekley v. Moore</u>, 204 F.3d 1083 (11 Cir. 2000)).

more than one-year of untolled time before the filing of the
instant petition. This is true even if Hamilton was not afforded
tolling time credit for the time that two of his petitions for
discretionary review were pending before the Florida Supreme Court.
See Reighn v. McNeil, _____ F.Supp.2d _____, 2009 WL 3644805, *4
(N.D.Fla. Oct 30, 2009)(holding that Petitioner's notice to invoke
the discretionary review jurisdiction of the Florida Supreme Court
was not a "properly filed" application for state post-conviction
relief in that Petitioner sought review of a per curiam affirmance
without written opinion from denial of Rule 3.850 motion),
*certificate of appealability denied*, ___ F.Supp.2d _____ 2009 WL
4673779 (N.D.Fla. Dec 08, 2009). See also Wright v. McNeil, 2009 WL
1058733, *2 n.4 (N.D.Fla. 2009)(unpublished)(holding that
petitioner's notice to invoke the discretionary jurisdiction of the
Florida Supreme Court from a per curiam affirmance of order denying
Rule 3.850 motion where the Supreme Court of Florida dismissed the
petition for review for lack of jurisdiction, citing Jenkins v.
State, 385 So.2d 1356 (Fla.1980) did not toll federal statute of
limitations); Wilson v. Crosby, 2006 WL 3219602, at *6 (N.D.Fla.
2006)(unpublished)(holding that prisoner's notice to invoke
discretionary jurisdiction of Florida Supreme Court to review per
curiam decision issued in direct appeal did not toll the
limitations period under §2244(d)(2)); Grove v. Secretary, 2009 WL
179626, at *4 (M.D.Fla. 2009)(unpublished)(same concerning notice
to invoke discretionary jurisdiction of Florida Supreme Court to
review denial of postconviction relief); Figueras v. Florida, 2008
WL 2856747, at *5 (M.D.Fla. 2008)(unpublished); Bismark v. Crosby,
2005 WL 1051435 (M.D.Fla. 2005)(unpublished)(same). The petition is
therefore timely, contrary to the assertion of the respondent.[4]

---

[4]It is noted that this Court disagrees with the respondent's calculations
regarding the amount of untolled time. For example, the instant petition is
deemed filed as of October 28, 2008, and not November 10, 2008, as maintained by
the respondent. See Petition at 15. (DE# 1). Further, this Court disagrees that

## B. Exhaustion and Procedural Bar

It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b)(1), thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29-30 (2004)(citing Duncan v. Henry, 513 U.S. 364, 365 (1995)(per curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Further, to provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin, 541 U.S. at 29-30; Duncan, 513 U.S. at 365-366. See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Thus, an applicant's federal writ of habeas corpus shall not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c).[5] In Florida, exhaustion is ordinarily accomplished on

_____

Hamilton is not entitled to tolling time credit while his petition for all writs act remained pending before the Florida Third District Court of Appeal. Here, the appellate court accepted the petition as timely and properly filed, and "denied" the petition. See DE# 9; Ex. V. The motion was, therefore, "properly filed" within the meaning of Artuz v. Bennett, 531 U.S. 4 (2000). Even if such a petition was not the proper procedural vehicle to seek postconviction relief, Hamilton's petition was accepted by the state courts for filing and disposed of. The one-year limitations period was tolled until the date on which the Florida appellate courts declined to grant further relief.

[5]The terms of 28 U.S.C. §2254(b) and (c) provide in pertinent part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
> (A) the applicant has exhausted the remedies available in the courts of     the State; or
> (B)(i) there is absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
> .     .     .

direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See</u> <u>Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001). Claims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. <u>See</u> <u>Kelley v. State</u>, 486 So.2d 578, 585 (Fla.), *cert. denied*, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). And, claims of ineffective assistance of appellate counsel are raised in a state petition for writ of habeas corpus directed to the appellate court that considered the direct appeal. <u>Smith v. State</u>, 400 So.2d 956, 960 (Fla. 1981).

The above-reviewed procedural history of this case indicates that all three claims of the instant petition were unsuccessfully raised before the state courts and thereby exhausted. Specifically, claim one was pursued in a state habeas corpus proceeding and claim two was raised on direct appeal. Claim three was raised in a petition pursuant to Florida's all writs act. <u>See</u> <u>Fla.R.App.P</u>. 9.100 (outlines the requirements that apply to the extraordinary remedies of mandamus, prohibition, quo warranto, certiorari, habeas corpus, and all writs necessary to the complete exercise of appellate jurisdiction). Moreover, claims one and two are not subject to any procedural bars. <u>See</u> <u>Cone v. Bell</u>, ___ U.S. ___, ___, 129 S.Ct. 1769, 1780 (2009)(holding that when petitioner fails to first raise his federal claims in state court in compliance with relevant state procedural rules, federal habeas review is

---

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

9

procedurally barred). <u>See also</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).[6] Claim three is arguably procedurally barred for the reasons asserted by the respondent in his supplemental response at 9-12 (DE# 17). This Court need not belabor the procedural bar argument as to this claim, however, because claim three is not cognizable in this federal proceeding for the reasons stated below. <u>See</u> <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564 n. 4 (8 Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best").

## V. <u>Standard of Review</u>

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

---

[6]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999). In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. <u>Id</u>. at 1303. In Florida, a District Court of Appeal's <u>per</u> <u>curiam</u> affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11 Cir. 1990).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing

evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, 553 U.S. 1007 (2008).

VI. <u>Discussion</u>

A. <u>Claim One</u>

Hamilton claims in ground one that he received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal that the trial court's instruction to the jury on excusable homicide was "fundamentally flawed" and "misleading" in that it negated his theory of self-defense. Specifically, Hamilton alleges that the trial court's use of the standard jury instruction misled the jury to believe that a homicide cannot be excused when a dangerous weapon is involved.[7] This claim was raised and rejected in the state habeas corpus proceeding.

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a

---

[7]The subject jury instruction is as follows with the highlighted portion being challenged by Hamilton:

The killing of a human being is excusable, and therefore lawful, under any one of the following three circumstances:

1.   When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or

2.   When the killing occurs by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation, or

3.   When the killing is committed by accident and misfortune resulting from a sudden combat, *if a dangerous weapon is not used* and the killing is not done in a cruel and unusual manner.

"Dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.

(emphasis added)(Record on Direct Appeal at 48)(D# 18).

result. Strickland v. Washington, 466 U.S. 668 (1984). The two-prong Strickland test is equally applicable in assessing counsel's performance in appellate proceedings. Smith v. Robbins, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)(*Strickland* standard applies to claims alleging ineffective assistance of appellate counsel). The petitioner must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal-that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If the petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice. Smith, 528 U.S. at 285, 120 S.Ct. at 764, *citing*, *Strickland*, 466 U.S. at 687-691, 104 S.Ct. 2052. That is, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. Smith, 528 U.S. at 286, 120 S.Ct. at 764, *citing*, *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. Jones v. Barnes, 463 U.S. 745 (1983).

Under Florida law, "an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument." Diaz v. Secretary for the Dept. of Corrections, 402 F.3d 1136, 1142 (11 Cir. 2005). See also Jackson v. Dugger, 931 F.2d 712, 715 n.7 (11 Cir. 1991)(noting that the "failure of trial counsel to object at trial bars appellate review"). The only exception to this rule is when the error constitutes a "fundamental error." Id. For an error

to be "fundamental and justify reversal in the absence of a timely objection," it must be such that "a verdict of guilty could not have been obtained without the assistance of the alleged error." Porter v. Crosby, 840 So.2d 981, 984 (Fla. 2003)(internal quotation marks and citation omitted). In this case, trial counsel apparently lodged no objection to the final instructions given by the trial court, including the instructions on excusable and justifiable homicide. See Trial Transcript at 578-80. Thus, the issue here is whether the instructions given rendered the trial fundamentally unfair, requiring appellate counsel to raise the issue on direct appeal.

Hamilton has failed to establish that the instruction given regarding excusable homicide rendered his trial fundamentally unfair or in any way negated his self-defense theory. The instructions in this case were appropriate to the case and accurately and adequately stated the relevant law. In Florida, the general rule is that in homicide trials where manslaughter appears on the jury form either as a charged or a lesser offense, the jury must be instructed on the definitions of justifiable and excusable homicide unless the defense expressly agreed to or requested an incomplete instruction. See Pena v. State, 901 So.2d 781, 786-87 (Fla. 2005). See also Reyes v. State, 924 So. 2d 932 (Fla. 3d DCA 2006)(holding that in all murder and manslaughter cases, the court must instruct the jury as to the definitions of justifiable and excusable homicide), *citing* State v. Lucas, 645 So.2d 425 (Fla. 1994). These instructions are to be given "because manslaughter is a residual offense that can only be fully defined by exclusion of the properly explained defenses of excusable and justifiable homicide." Pena, supra. The Florida courts have held that the failure to give a complete instruction on manslaughter during the original jury charge is fundamental error which is not subject to

harmless-error analysis where the defendant has been convicted of either manslaughter or a greater offense not more than one step removed, such as second-degree murder.  See State v. Lucas, 645 So.2d at 427. See also Thurston v. State, 762 So.2d 558 (Fla. 4 DCA 2000)(reversing conviction where the jury was not instructed on justifiable and excusable homicide at all and where the state conceded that this was fundamental error).

Since the offense of manslaughter was an applicable lesser included offense of the crime charged, and Hamilton made no express agreement or request for an incomplete instruction, the trial court was obligated to instruct the jury on justifiable and excusable homicide, which it did.[8] See Record on Direct Appeal at 46-8, 50-4. (DE# 18; App. A). The trial court's instructions properly tracked the language of the standard instruction, see Fla.Std.Jury Instr. (Crim.) 7.1; which in turn tracked the applicable statute, Fla.Stat. §782.03 (West 1999).[9] See Record on Appeal at 48-50. Accordingly, the trial court properly explained the defenses of excusable and justifiable homicide to the jury and, as such, gave a complete instruction on manslaughter.[10] Although Hamilton now

---

[8]In addition to the full instruction on excusable homicide, see fn. 8, the trial court further instructed the jury: "The killing of a human being is justifiable homicide and lawful it necessarily done while resisting an attempt to murder or commit a felony upon the defendant." (Record on Direct Appeal at 47)(DE# 18).

[9]Excusable homicide is defined as follows:

Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

Fla.Stat. 782.03 (West 1999).

[10]Specifically, when instructing the jury on the lesser offense of manslaughter, the court cautioned the jury that, "However, the defendant cannot be guilty of Manslaughter if the killing was either justifiable or excusable

objects to certain language included in the instruction, the trial court committed no error in instructing the jury on the offense of manslaughter as it did.[11] <u>See generally</u> <u>In re: Use by the Trial Courts of the Standard Jury Instructions</u>, 198 So. 2d 319, 319 (Fla. 1967)(noting that the standard jury instructions "state as accurately as a group of experienced lawyers and judges could state the law of Florida in simple understandable language.").

Even if this Court were to find that the now-challenged language should not have been included in the jury instruction, no fundamental error occurred here. Trial counsel was permitted and did forcefully pursue the theory at trial that the shooting was a justifiable use of deadly force and that Hamilton had acted in self-defense. <u>See e.g.</u>, Trial Transcript at 188-90, 255-57, 262-77, 557-58, 559. The trial court instructed the jury on the defense of self-defense pursuant to applicable Florida law,[12] as requested by

---

homicide as I previously explained those terms." (Record on Direct Appeal at 50)(DE# 18).

   [11]In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard jury instructions accurately and adequately state the relevant law. <u>See</u> <u>Moody v. State</u>, 359 So.2d 557 (Fla. 4 DCA 1978). When the standard instructions do accurately and adequately state the relevant law, trial courts in Florida are required to give the standard instructions in the absence of extraordinary circumstances. <u>Id</u>.

   [12]As to self-defense, the trial court instructed the jury as follows:

      An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which JOSHUA A. HAMILTON is charged if the death of DEMOND HENDERSON resulted from the justifiable use of force likely to cause death or great bodily harm.

      A person is justified in using force likely to cause death or great bodily harm, if he reasonably believes that such force is necessary to prevent:

         Imminent death or great bodily harm to himself.

(Record on Direct Appeal at 52)(DE# 18). The court went on to instruct the jury as to the law of self-defense as was applicable at the time of the commission of the offense. <u>Id</u>. at 52-4. The law in Florida at the time of the subject criminal incident was that before a defendant could avail himself of the defense of self-defense, he was required to establish that his life was in imminent danger and

Hamilton. <u>See</u> Record on Appeal at 46-54. The court further instructed the jury that:

> If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force likely to cause death or great bodily harm, *you should find the defendant not guilty.*
>
> However, if from the evidence you are convinced that the defendant was not justified in the use of force likely to cause death or great bodily harm, you should find him guilty *if all the elements of the charge have been proved.*

(emphasis added). <u>Id</u>. at 53-4. The court also instructed the jury:

> The killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder *or commit a felony upon the defendant.*

(emphasis added). <u>Id</u>. at 47.

The jury was also fully instructed as to the elements of the crime charged, second degree murder, and the lesser offense of manslaughter. <u>Id</u>. at 49, 50. It is important to note that the trial court clearly instructed the jury that the burden was, at all times, on the state to prove the elements of the charged offenses beyond a reasonable doubt. <u>Id</u>. at 49, 50, 53-4, 59. <u>See also</u> Trial Transcript at 578 (immediately before instructing jury, the trial court stated: "Simply the State and only the State has the burden

---

he could not safely retreat. <u>See</u> <u>Fla.Stat</u>. §776.012 (West 1997)(permitting the use of deadly force against another, "only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself."). <u>See generally</u> <u>Soberon v. State</u> 545 So.2d 490 (Fla. 3 DCA 1989)(recognizing that a person under attack has a duty to "retreat to the wall" before taking a life, and that the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life). <u>See also</u> <u>Thomas v. State</u>, 918 So.2d at 327, 330 (Fla. 1 DCA 2005). Florida law with regard to the duty to retreat was materially altered by statutory amendments that became effective on October 1, 2005, and the amendments are commonly refereed to as the "Stand Your Ground" statute. <u>See</u> ch. 2005-27, §§1, 2, Laws of Fla. <u>See also</u> §§776.012, 776.013, <u>Fla.Stat</u>. (West 2005); <u>Bartlett v. State</u>, 993 So.2d 157 (Fla. 1 DCA 2008).

of proof in this case. The defense has no burden whatsoever."). The burden of proof never shifted to the defense. The instructions given, when viewed in their entirety, did not negate petitioner's defense of self-defense and permitted the jury to acquit Hamilton if they believed his actions were lawful. <u>See</u> <u>Farmer v. State</u>, 975 So.2d 1275, 1277 (Fla. 4 DCA 2008)(stating that, "juries use their common experience and apply a street version of self defense that allows a defendant to use a reasonable amount of force under the circumstances, and no more.").

Finally, based on a thorough review of the trial record, Hamilton received a fair trial and the evidence admitted as to Hamilton's guilt was more than sufficient to support his convictions. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979). The evidence consisted of both testimonial and physical evidence, showing that the unarmed victim was shot at least eleven times, seven of which were in the back. <u>See</u> Trial Transcript at 177-78, 475-85. The evidence also included Hamilton's tape-recorded inconsistent statements made to the police, which recording was played for the jury. <u>Id</u>. at 434. Thus, any error regarding the jury instructions given in this case was, at worst, harmless. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 627-30 (1993), <i>citing</i>, <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). No miscarriage of justice occurred here.

Since no fundamental error resulted from the jury instructions given, appellate counsel's performance cannot be deemed constitutionally ineffective for failing to raise the subject challenge to the jury instruction on direct appeal as fundamental error. Therefore, appellate counsel did not violate <i>Strickland</i> by not raising the issue on direct appeal. <u>See also</u> <u>Diaz v. Secretary for the Dept. of Corrections</u>, 402 F.3d 1136, 1142 (11 Cir. 2005).

Even if this Court were to find that appellate counsel's performance could in any way be deemed deficient for failing to raise the subject issue, Hamilton would not be entitled to relief in that he suffered no prejudice from the alleged deficiency because for the reasons stated immediately above, the underlying claim is meritless. See generally Knowles v. Mirzayance, 129 S.Ct. at 1411 (the law does not require counsel to raise every available non-frivolous defense); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). Since the omitted claim would not have been successful if raised on appeal, appellate counsel's performance did not affect the outcome of the appeal. See Jones v. Barnes, 463 U.S. 745 (1983); Eagle v. Linahan, 279 F.3d 926, 943-44 (11 Cir. 2001)(requiring a showing of some likelihood of a more favorable result on appeal had appellate counsel raised the subject claim).

Accordingly, the state appellate court's denial of Hamilton's petition for writ of habeas corpus, where the ineffective assistance of appellate counsel claim now raised in this federal petition was presented, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).[13] Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law'

---

[13]It is noted that the state appellate court in the state habeas corpus proceeding was the same court that had decided Hamilton's direct appeal. By denying the state habeas corpus petition, the court implicitly found that the outcome of the direct appeal proceedings would not have been different if appellate counsel had raised the subject issue on direct appeal.

simply because the court did not cite [Supreme Court] opinions....
[A] state court need not even be aware of [Supreme Court]
precedents, 'so long as neither the reasoning nor the result of the
state-court decision contradicts them.'")(*quoting* <u>Early v. Packer</u>,
537 U.S. 3, 7-8 (2002).

## B. <u>Claim Two</u>

Hamilton claims in ground two that his convictions are
unlawful, because they are based upon improper comments made by the
prosecutor during rebuttal closing argument. More specifically, he
contends that the prosecutor argued facts not in evidence when she
referred to Judy Richardson's conversation with Sergeant Pino. Judy
Richardson was the victim's former girlfriend. He further appears
to maintain that the prosecutor improperly shifted the burden to
the defense when he referred to trial counsel's remarks regarding
Dr. Himeler.

Closing argument is intended to assist the jury in analyzing,
evaluating and applying the evidence. <u>United States v. Johns</u>, 734
F.2d 657, 663 (11 Cir. 1984).In considering a claim that the
prosecutor's comments to the jury during closing argument violated
the petitioner's right to a fair trial, federal habeas corpus
review is "the narrow one of due process, and not the broad
exercise of supervisory power." <u>Donnelly v. DeChristoforo</u>, 416 U.S.
637, 642 (1974); <u>Romaine v. Head</u>, 253 F.3d 1349, 1366 (11 Cir.
2001)(citing <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1403 (11 Cir. 1985)(en
banc)("A permissible argument, no matter how 'prejudicial' or
'persuasive,' can never be unconstitutional."), *vacated on other
grounds*, 478 U.S. 1016 (1986), *reinstated*, 809 F.2d 700 (1987)(en
banc)). To amount to a constitutional violation, the prosecutor's
remarks must have "so infected the trial with unfairness as to make

the resulting conviction a denial of due process."[14] <u>Donnelly</u>, 416 at 644.

The identical claim raised here was presented by Hamilton on direct appeal, and the Florida Third District Court of Appeal in its well-reasoned written opinion found the claim meritless, stating as follows:

> [Hamilton] contends that the State made improper arguments during the State's rebuttal. We agree that there were improper arguments, but conclude that the court's failure to sustain the defense objections was harmless under the circumstances of this case.
>
> Witness Nina Thompson had given a statement to the police in which she said she observed the confrontation between [Hamilton] and the victim which led up to the shooting, and that she saw the shooting itself. She had observed the events from her apartment balcony. The next day, she called the police and told them that she had not actually seen the shooting occur. She had started to go back into the apartment when the gunshots began. Thus she saw the events just before and after the shooting but not the shooting itself.
>
> The State sought to suggest that witness Thompson's change in testimony occurred because of threats by Judy Richardson, the ex-girlfriend of the victim.FN2 During the trial the court sustained defense objections to testimony regarding Ms. Richardson because the only evidence the State offered was inadmissible hearsay. The State attempted to have the investigating officer testify that Ms. Richardson had called him and told him that she had heard that Ms. Thompson was cooperating with the police, but that testimony was excluded as hearsay.

---

[14]In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert. denied</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11 Cir.), <u>cert. denied</u>, 485 U.S. 964 (1988). Federal case law regarding closing argument is the same as Florida law, <u>see e.g.</u>, <u>Darden v. Wainwright</u>, 477 U.S. 168, 179-183 (1986)(quoting <u>Donnelly</u>, 416 U.S. at 643). <u>See</u> <u>Ford v. State</u>, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

> FN2. Ms. Thompson testified that she contacted the police to clarify her statement because her mother urged her to do so.

During the State's rebuttal closing, the State argued, "Judy Richardson tells Sergeant Pino she has heard that Nina Thompson has been talking to the police." TR. 570. The defense promptly objected. At a sidebar conference, the court's recollection was that this fact had come into evidence. However, it had not. Thus, the objection should have been sustained.

The State proceeded to elaborate on this argument, drawing another defense objection which was also overruled. For the same reason, that objection should have been sustained.

We conclude, however, that under the circumstances of this case the error was harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So.2d 1129 (Fla. 1986).[15] The only difference between Ms. Thompson's first statement and second statement to the police was whether she actually saw the shooting occur. At [Hamilton's] trial, however, it was undisputed that [Hamilton] shot the victim eleven times during an argument with the victim over money that the victim owed to [Hamilton]. This occurred in front of a crowd of people in the Overtown area of Miami. [Hamilton] shot the victim twice in the front, once in the side, seven times in the back, and once in the back of the arm. [Hamilton] maintained that he shot the victim in self defense because he saw the victim reaching for a gun.FN3

> FN3. The defendant gave a statement to the police claiming self defense. The statement was introduced into evidence, but [Hamilton] did not testify at trial.

Since it was conceded by the defense that [Hamilton] shot the victim, and since the only difference between Ms. Thompson's two statements was whether she actually observed the gunshots being fired, and since the alleged threats by Judy Richardson were not claimed to be brought about by [Hamilton], the error is harmless beyond a reasonable doubt.

The defense also contends that the State made an impermissible burden-shifting argument and that the court should have granted its motion for mistrial. At trial, the chief medical examiner testified in place of the doctor who had performed

---

[15]*DiGuilio* stands for the proposition that error is harmless where there is no possibility that it affected the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).

the actual autopsy, Dr. Fernandez. Dr. Fernandez had taken a job with the medical examiner's office in Dallas, Texas. The chief medical examiner was designated to testify for the medical examiner's office based on the work Dr. Fernandez had performed.

In closing argument, the defense argued that the State had engaged in an unfair tactic by this substitution. In its reply the State argued that this substitution was routine practice and did not involve any foul play. The State then said of defense counsel, "He wants you to look at this as something unfair because what we got out was **a scenario that he can't rebut** and he doesn't want you to consider it." TR. 573 (emphasis added). The defense objected and stated that it had a motion. The trial court reserved on the motion.

After the State concluded its closing argument the court said:

THE COURT: Thank you, counsel. Ladies and gentlemen, now you heard all the closing arguments of the attorneys. You heard all the evidence in this case. As I reminded you several times, ladies and gentlemen, during the course of my limited instructions, what the attorneys say is not to be considered as evidence. **Simply the State and only the State has the burden of proof in this case. The defense had no burden whatsoever.**

At this time I will give you your instructions.

TR. 578 (emphasis added).

After the jury retired, the court considered the defense motion for mistrial, which was based on the theory that the State in its argument had impermissibly shifted the burden of proof to the defense. The court denied the motion, stating in part, "as you saw at the close of all the closing arguments, I reminded the jury the defense had no burden of proof in this case." TR. 579. In so doing the court had granted an appropriate curative instruction. The motion for mistrial was correctly denied.

(emphasis supplied). <u>Hamilton v. State</u>, 907 So.2d at 1229-31.

    After review of the closing argument in its entirety in conjunction with the evidence admitted at trial,[16] this Court agrees

---

[16] <u>See</u> Trial Transcript. (DE# 12). For a thorough recitation of the evidence admitted at trial with references to the trial transcript, see the briefs filed in the direct appeal proceeding. (DE# 9; Ex. E, F).

with the state appellate court's conclusion that the prosecutor's argument, while possibly improper in part, did not render the trial fundamentally unfair, requiring a new trial. See Donnelly v. DeChristoforo, 416 U.S. at 643. There was overwhelming evidence of guilt in this case. It was undisputed that Hamilton had shot and killed the victim. The only issue at trial was whether Hamilton's actions constituted a justifiable use of deadly force. He claimed at trial that the victim was known to be violent and that he carried a gun. The jury apparently rejected that defense and found otherwise, as was its prerogative. See generally Garramone v. State, 636 So.2d 869 (Fla. 4 DCA 1994)(holding that if evidence of self-defense is adduced, self-defense becomes an issue for the jury to determine).

Contrary to Hamilton's assertion, the now-challenged remarks did not mislead the jury as to the burden of proof and/or in any way shift the burden of proof to Hamilton, which is clearly improper under both federal and state law principles. See e.g., Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11 Cir. 1983); United States v. Downs, 615 F.2d 677, 679 (5 Cir.1980); Jackson v. State, 575 So.2d 181 (Fla. 1991)(when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof); Atkins v. State, 878 So.2d 460 (Fla. 3 DCA 2004)(state improperly shifted the burden of proof when it implied that the defendant needed to prove that the victim was lying in order to receive acquittal); Northard v. State, 675 So.2d 652, 653 (Fla. 4 DCA 1996)(prosecutor's argument was impermissible because it asked the jury to determine who was lying as the proper test of determining guilt).

Further, as noted by the state appellate court, the trial court clearly and correctly instructed the jury that what the

24

lawyers said during opening statement and closing argument was not evidence in the case and should not be considered as such, and that the case must be decided only upon the evidence presented at trial. See Trial Transcript at 153, 534. The court also clearly and correctly instructed the jury that Hamilton was presumed innocent, that the state carried the burden of proof and that the defense had no burden whatever. See Record on Direct Appeal at 56-7, 59. (DE# 18). As indicated above, the jury was also fully instructed as to the defense theory of justifiable and excusable use of force as well as the defense of self-defense. Id. at 47-8, 52-4. Thus, there is no reasonable probability that the result of the trial would have been different if these arguments had not occurred. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Accordingly, the state appellate court's rejection on direct appeal of Hamilton's claim regarding the prosecutor's remarks made during closing argument was factually reasonable and in accordance with applicable federal principles, and its result should not be disturbed. 28 U.S.C. §2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

### C. Claim Three

Hamilton claims in ground three that the trial court erred by instructing the jury that he had to prove his claim of self-defense beyond a reasonable doubt. This claim is an issue of state law not cognizable on federal habeas review.

The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722, 111 S.Ct.

2546, 115 L.Ed.2d 640, *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). "Federal habeas relief is unavailable 'for errors of state law.'" Jamerson v. Secretary for Dept. of Corrections, 410 F.3d 682, 688 (11 Cir. 2005)(*quoting* Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). State court jury instructions ordinarily comprise issues of state law and are not subject to federal habeas corpus review unless they are so prejudicial as to render the trial fundamentally unfair. "An error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992)(quotation omitted). See also Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11 Cir. 1983)(stating that "[a] defective jury charge raises an issue of constitutional dimension only if it renders the entire trial fundamentally unfair."). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992)(quotation omitted). A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11 Cir. 1983); United States v. Bosby, 675 F.2d 1174, 1184 (11 Cir. 1982).

Hamilton fails to demonstrate that the jury instructions given in this case rendered his trial fundamentally unfair. The subject jury instruction with regard to self-defense is quoted above in connection with the discussion of ground one. See Record on Direct Appeal at 53-4. (DE# 18). The portion of the standard instruction to which Hamilton's argument is addressed simply informed the jury that they should find Hamilton not guilty if they had "a reasonable doubt on the question of whether or not the defendant was justified in the use of force likely to cause death or great bodily harm...."

26

Contrary to Hamilton's argument, this statement in no way shifted the burden of proof to him as held by the Florida courts. <u>Jones v. State</u>, 13 So.3d 139, 140 (Fla. 5 DCA)(holding that the standard jury instruction on the justifiable use of deadly force did not shift the burden of proof to the defendant), <i>dism.</i>, 17 So.3d 292 (Fla. 2009); <u>Roger v. State</u>, 670 So.2d 160, 162 (Fla. 5 DCA 1996)(holding that the jury was sufficiently apprised of the state's burden of proof regarding self-defense where they were instructed that they must find the defendant not guilty if they had a reasonable doubt on the question of whether the defendant was justified in the use of deadly force). <u>Cf</u>. <u>Fields v. State</u>, 988 So.2d 1185 (Fla. 5 DCA 2008)(reversing conviction where the trial court erroneously instructed the jury that they could only acquit the defendant if the defense of self-defense was established beyond a reasonable doubt).

Additional instructions were also given in this case, clearly explaining to the jury that the burden of proof rested solely with the state, and that Hamilton was not required to prove anything. <u>See</u> Record on Direct Appeal at 56, 59. If Hamilton is asserting that the jury should have also been instructed of the state's burden to disprove the claim of self-defense, any such assertion is meritless. <u>See</u> <u>Mosansky v. State</u>, 33 So.3d 756, 758 (Fla. 1 DCA 2010). This is true although the state effectively has the burden to prove that the defendant was not acting in self-defense during the commission of the criminal act when self-defense is properly at issue.[17]  <u>Id</u>. Thus, the instructions, taken as a whole, clearly,

_____

[17]In Florida, the law is clear that raising self-defense does not shift the burden of proof to the defendant. Rather, "[o]nce a defendant makes a prima facie showing of self-defense, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense." <u>Fields v. State</u>, 988 So.2d 1185, 1188 (Fla. 5 DCA 2008)(<i>citing</i> <u>Fowler v. State</u>, 921 So.2d 708, 711 (Fla. 2 DCA 2006)). <u>See also</u> <u>Brown v. State</u>, 454 So.2d 596, 598 (Fla. 5 DCA 1984)("While the defendant may have the burden of going forward with evidence of self-defense,

comprehensively, and correctly instructed the jury on the state's burden of proof.

Even if the instruction was in any way flawed, no due process violation occurred here. See Martin v. Ohio, 480 U.S. 228, 233-36, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987)(holding that it is not a violation of the Due Process Clause for State of Ohio to place the burden of proving self-defense on a defendant charged with committing aggravated murder since the statute did not shift the burden of proof as to the elements of the charged offense), citing, In re Winship, 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)(holding that the state is required to prove every element of a crime beyond a reasonable doubt). As found, the burden of proof never shifted from the state to Hamilton and the state was clearly required to prove all elements of the appropriate crimes beyond a reasonable doubt. Martin, supra. Hamilton is not entitled to habeas corpus relief on the claim raised as ground three.

## VII. Conclusion

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

---

the burden of proving guilt beyond a reasonable doubt never shifts from the State, and this standard broadly includes the requirement that the State prove that the defendant did not act in self-defense beyond a reasonable doubt.")(citations omitted).

SIGNED this <u>9</u><sup>th</sup> day of July, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Joshua Hamilton, <u>Pro</u> <u>Se</u>
     DC# M04981
     Hamilton Correctional Institution-Main Unit
     10650 S.W. 46 Street
     Jasper, FL 32052

     Douglas J. Glaid, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131